IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| Midland Auto Recovery, LLC, | ) | C/A No.: 3:12-cv-962-JFA |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| TitleMasters of Georgia, LLC, | ) | |
| Defendant. | ) | |

This matter comes before the court on Defendant TitleMasters of Georgia, LLC's ("TitleMasters") motion to dismiss for lack of personal jurisdiction. In the alternative, the defendant has asked that this case be transferred to the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1404. TitleMasters has further moved for dismissal of Counts III–VII and IX–X of Plaintiff Midland Auto Recovery's ("Midland") Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Midland opposes the defendant's motion. For the reasons discussed below, this court denies Defendant's Motion.

I.  **Factual and Procedural History**

TitleMasters is a Georgia company in the title pawn and loan business that maintains a customer base predominantly in Georgia and Texas. According to TitleMasters, Midland approached TitleMasters in 2010 about serving as an intermediary for TitleMasters in repossessing collateral on delinquent accounts by posting customer details from those accounts on a national database, thereby connecting TitleMasters with local repossession agents who would attempt to recover the collateral. Although it is clear that Midland and TitleMasters

entered into a business relationship, there seems to be some question as to whether the terms of that relationship were defined by a contract sent to TitleMasters by Midland or whether the parties had only an oral agreement to work together that was not solidified in writing.

The relationship became strained near the beginning of 2012, and on March 6, 2012, Midland filed an action against TitleMasters in the Court of Common Pleas of the Fifth Judicial Circuit, Richland County, South Carolina. Soon after, Midland filed an Amended Complaint, and TitleMasters removed the suit to this court. The Amended Complaint lists the following causes of action against TitleMasters: (1) breach of contract, (2) breach of contract/repudiation, (3) breach of contract accompanied by a fraudulent act, (4) fraud, (5) constructive fraud, (6) fraudulent concealment, (7) unfair trade practice claims, (8) unjust enrichment, (9) negligent misrepresentation, and (10) declaratory judgment and injunctive relief. On April 23, 2012, TitleMasters filed the instant Motion to Dismiss for Lack of Jurisdiction, or in the Alternative, Motion to Transfer Case, or in the Further Alternative, Motion to Dismiss for Failure to State a Claim. (ECF No. 11). Midland filed a Response in Opposition on May 11, 2012, (ECF No. 13), and TitleMasters replied on May 21, 2012, (ECF No. 14).

## II. Legal Standard

### A. Motion to Dismiss for Lack of Personal Jurisdiction

A federal court may exercise personal jurisdiction over a "foreign corporation if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." *Consuling. Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009); Fed. R. Civ. P. 4(k)(1)(A). Because South Carolina courts have consistently construed the South Carolina long-arm statute to extend to the outer reaches of the Fourteenth Amendment, the court's statutory

inquiry merges with its constitutional inquiry. *See Cockrell v. Hillerich & Bradsby Co.*, 611 S.E.2d 505, 508 (S.C. 2005); *see also Geometric*, 561 F.3d at 277. The Fourteenth Amendment requires sufficient "minimum contacts" with the forum such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations and citations omitted). If the defendant's contacts with the forum give rise to the basis of the suit, those contacts may provide the basis to establish what is referred to as specific jurisdiction. In the specific jurisdiction context, minimum contacts means: (1) that defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) that the plaintiff's claims arise out of those activities directed at the state; and (3) that exercise of the court's jurisdiction over the defendant would be constitutionally reasonable. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003).

B.   **Motion to Transfer Case**

A district court may transfer an action based on "the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Although the party seeking transfer under section 1404(a) bears the burden of establishing that a transfer of venue is proper, the burden of so doing is substantially less than that for a transfer under the doctrine of *forum non conveniens*. *DeLay & Daniels, Inc. v. Allen M. Campbell Co.*, 71 F.R.D. 368, 370–71 (D.S.C. 1976).

C.   **Motion to Dismiss for Failure to State a Claim**

When considering a 12(b)(6) motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999). The United States Supreme Court has stated, however, that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). Accordingly, Plaintiffs must put forth claims that cross "the line from conceivable to plausible." *Id.* at 1950–51 (internal quotation omitted).

### III. Analysis

As previously mentioned, Defendant has asked that this case be dismissed for lack of personal jurisdiction. In the alternative, it has asked that this case be transferred to another U.S. District Court, and in the further alternative, Defendant has asked that certain claims in the Complaint be dismissed for failure to state a claim.

#### A. Motion to Dismiss for Lack of Personal Jurisdiction

TitleMasters denies that it has sufficient minimum contacts with the State of South Carolina for this court to have personal jurisdiction or that personal jurisdiction over Defendant would comport with traditional notions of fair play and substantial justice. Midland disagrees.

### 1. Purposeful Availment

According to TitleMasters, it has not purposefully availed itself of the benefits of conducting business in South Carolina. In the business context, to determine whether there is purposeful availment, courts in the Fourth Circuit may consider whether:

- The defendant maintains offices or agents in the forum state;
- The defendant owns property in the forum state;
- The defendant reached into the forum state to solicit or initiate business;
- The defendant deliberately engaged in significant or long-term business activities in the forum state;
- The parties contractually agreed that the law of the forum state would govern disputes;
- The defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;
- The nature, quality, and extent of the parties' communications about the business being transacted; and
- The performance of contractual duties was to occur within the forum.

*Geometric*, 561 F.3d 273, 277 (4th Cir. 2009).

TitleMasters has no offices, agents, or property in South Carolina. Moreover, TitleMasters contends that it was the plaintiff who originally contacted TitleMasters about using the plaintiff's services. As to TitleMasters' activities in and contact toward the State, mostly a representative of TitleMasters used either phone or email to contact Midland, but that representative did make a single, due diligence visit to South Carolina to verify Midland's representations about its business. TitleMasters contends that none of these contacts are enough to show purposeful availment. TitleMasters also asserts that

> [I]t cannot fairly be said that performance took place in South Carolina because the primary aim of the parties' business was the recovery of collateral for loans issued to non-South Carolina residents. . . . Any physical work as a result of the arrangement took place in the actual recovery of collateral, not, as Midlands suggests, in so-called research tasks.

(ECF No. 11-1, p. 12).

In support of its argument that it has not purposefully availed itself of the benefits of conducting business in South Carolina, TitleMasters cites two Fourth Circuit cases, *Fed. Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654 (4th Cir. 1989), and *Wolf v. Richmond Cnty. Hosp. Auth.*, 745 F.2d 904 (4th Cir. 1984). Both cases seem distinguishable from the instant case. In *Lake Shore*, the Fourth Circuit upheld the district court's finding that personal jurisdiction could not be conferred on out-of-state company defendants in South Carolina, but the defendant in that case was a crane manufacturer whose crane happened to cause some damage on a boat while it was docked in Charleston, South Carolina. 886 F.2d 654. In *Wolf*, the court found that a Georgia hospital had not purposefully availed itself of the benefits of conducting business in South Carolina where a South Carolina resident voluntarily sought treatment from the hospital. 745 F.2d 904. TitleMasters argues that because it does not issue loans or pawns to South Carolina residents, it does not derive any benefits or protections related to its customers under South Carolina law and, therefore, could not reasonably anticipate being haled into court in South Carolina.

Midland contends that TitleMasters purposefully availed itself of the privilege of conducting business in South Carolina when its agents entered into an agreement to do business with Midland, a South Carolina company. According to Midland, there was a contract between the parties, and "courts regularly find minimum contacts and purposeful availment when a foreign defendant enters a contract 'with substantial connection with the forum state' with an in-state entity." (ECF No. 13, p. 12; *see, e.g.*, *Kimbrel v. Neiman-Marcus*, 665 F.2d 480, 482 (4th Cir. 1981); *Motley Rice, LLC v. Baldwin & Baldwin, LLP*, 518 F. Supp. 2d 688, 694 (D.S.C. 2007)). Midland further points out that the business between the companies was significant—TitleMasters assigned approximately 2,000 vehicle recovery files to Midland, and about half

6

were recovered. Furthermore, although not part of the contract, Midland performed some of the repossessions itself, and Midland stored the vehicles that it repossessed in South Carolina. In support of its claim that TitleMasters has sufficient minimum contacts for personal jurisdiction in this case, Midland cites *McNeil v. Sherman*, a District of South Carolina case where the court found minimum contacts were established because the entry into a contract "to be performed, at least in part, within South Carolina will subject a party to personal jurisdiction in South Carolina as long as the party was aware that some performance was to take place in the state." Civil Action No. 2:09-cv-00979-PMD, 2009 WL 3255240, at *4 (2009) (citations omitted).

This court finds sufficient minimum contacts based on the work that Midland performed for TitleMasters as an intermediary. During the hearing, TitleMasters stressed that the work Midland did "could have been done anywhere"; however, this court finds that the defendant specifically engaged Midland to serve as its intermediary, sending it almost two thousand vehicle recovery files to Midland, a South Carolina company. Moreover, Midland entered that data into a database from South Carolina. Additionally, a representative from TitleMasters visited Midland's site in South Carolina, and a representative of TitleMasters contacted Midland representatives frequently. For at least these reasons, this court finds that there are sufficient minimum contacts for personal jurisdiction in this case.

### 2. Fair Play and Substantial Justice

In determining whether the assertion of personal jurisdiction by this court would offend traditional notions of fair play and substantial justice, TitleMasters urges this court to consider the following factors:

- the burden upon the defendant in litigating in the forum selected by the plaintiff,
- the forum state's interest in adjudicating the dispute,
- the plaintiff's interest in obtaining convenient and effective relief,

7

- the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and
- the shared interest of the several states in furthering fundamental substantive social policies.

*Geometric*, 561 F.3d at 279.

According to TitleMasters, Midland has alleged no facts indicating that South Carolina has a legitimate interest in adjudicating the dispute. Furthermore, TitleMasters points out that all of its conduct took place in Georgia and that it did not breach any agreement with Midland in South Carolina. Additionally, nearly all of the potential non-party witnesses and physical evidence are likely to be found in Georgia according to TitleMasters. Finally, TitleMasters contends that "[f]orcing litigation in this forum for the sole convenience of Plaintiff runs contrary to the concept of judicial efficiency and would impose substantial burdens on TitleMasters." (ECF No. 11-1, p. 15).

Midland disputes TitleMasters claim that South Carolina has no interest in the dispute, stating, "South Carolina has a 'substantial interest in adjudicating a contract dispute between a South Carolina resident and an out-of-state defendant.'" *McNeil*, 2009 WL 3255240, at *6. Furthermore, Midland points out that TitleMasters is not put at a severe disadvantage by the case being heard before this court—travel between neighboring states is not unduly burdensome in this day and age.

This court finds that South Carolina has an interest in adjudicating this case. In addition, TitleMasters has failed to raise any issues that would persuade this court that its assertion of personal jurisdiction would offend traditional notions of fair play and substantial justice

### B. Motion to Transfer

In its Motion to Transfer, Defendant raises the following issues, which it believes necessitate transfer: that a Georgia forum is more convenient to non-party witnesses; that more

operative events took place in Georgia; and that transfer is in the "interest of justice." Based on the fact that the defendant makes loans and pawns to residents of Georgia and Texas, Defendant submits that non-party witnesses (repossession agents) would find Georgia to be a more convenient forum. Moreover, those non-party witnesses who do not reside in South Carolina are unlikely to be subject to the compulsory process of this court. Additionally, the documentary evidence maintained by TitleMasters and by any third-parties is located in Georgia where they run their respective businesses. As to the "interest of justice," TitleMasters argues that it has done nothing to purposefully avail itself of the benefits and privileges of conducting business in South Carolina. On the other hand, TitleMasters contends that Midland has clearly reached out to the State of Georgia. As such, a transfer to the United States District Court for the Northern District of Georgia is appropriate in TitleMasters's view.

Midland argues that its forum selection is entitled to substantial weight and that no factor exists to disturb this choice. As previously mentioned, South Carolina has an interest in resolving disputes involving its residents. As to witnesses, Midland points out that there are witnesses in many states, including South Carolina and Georgia, and that Columbia, South Carolina may be more convenient for some of them—even those residing in Georgia.

As to the issue of transfer, this court finds for the plaintiff. The court finds that the forum selection of the plaintiff is paramount, and TitleMasters has not persuaded this court that transfer to the United States District Court for the Northern District of Georgia is appropriate under 28 U.S.C. § 1404(a).

### C. Motion to Dismiss for Failure to State a Claim

For a variety of reasons, the defendant has moved that the following claims be dismissed: breach of contract accompanied by a fraudulent act, fraud, constructive fraud, fraudulent

9

concealment, unfair trade practices, negligent misrepresentation, declaratory judgment and injunctive relief. (ECF No. 11, p. 1). Viewing the facts in a light most favorable to the plaintiff, this court finds that the plaintiff has sufficiently alleged the claims that the defendant has asked this court to dismiss. Furthermore, additional discovery on these claims should not be overly burdensome to the parties. As such, this court denies TitleMasters' motion to dismiss causes of action III–VII and IX–X.

## IV. Conclusion

For the foregoing reasons, this court hereby denies Defendant's Motion to Dismiss and all alternative motions contained therein. (ECF No. 11).

IT IS SO ORDERED.

June 20, 2012
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge